CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
Assistant United States Attorney

60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5044
George.Hageman@usdoj.gov

Attorneys for United States of America

FILED

Sep 15 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HEFU CHAI,<br><br>Defendant. | CASE NO. 3:26-mj-71212 MAG<br><br>NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on September 15, 2026, the above-named defendant was arrested pursuant to an arrest warrant (copy attached) issued upon a

☐ Indictment

☐ Information

☒ Criminal Complaint

☐ Other (describe) ________________________

pending in the Southern District of New York, Case Number 26 MAG 3716.

In that case (copy of criminal complaint attached), the defendant is charged in Count One with commodities fraud, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), Title 17,

Code of Federal Regulations, Section 180.1, and Title 18, United States Code Section 2; and in Count Two with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2.

The maximum penalties are as follows:

Count One: 10 years' imprisonment; $1,000,000 fine; $100 special assessment; 3 years' supervised release; restitution; forfeiture.

Count Two: 20 years' imprisonment; $250,000 fine; $100 special assessment; 3 years' supervised release; restitution; forfeiture.

Respectfully Submitted,

CRAIG H. MISSAKIAN
UNITED STATES ATTORNEY

Date: September 15, 2026

/s/ ______________________
GEORGE O. HAGEMAN
Assistant United States Attorney

AUSA: Alexandra N. Rothman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HEFU CHAI,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 7 U.S.C. §§ 9(1), and 13(a)(5); 17 C.F.R. § 180.1; and 18 U.S.C. §§ 1343 and 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

26 MAG 3716

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOSEPH KIM, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
**(Commodities Fraud)**

1. From in or about 2025 up to and including in or about January 2026, in the Southern District of New York and elsewhere, HEFU CHAI, the defendant, willfully and knowingly, directly and indirectly, used and employed, and attempted to use and employ, in connection with a swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (1) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (2) making, and attempting to make, an untrue and misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (3) engaging, and attempting to engage in an act, practice, and course of business which operates and would operate as a fraud and deceit upon a person, to wit, CHAI, knowing that he had obtained material nonpublic information in breach of a duty, used that information to trade perpetual futures on a decentralized derivatives exchange for personal gain.

(Title 7, United States Code, Sections 9(1), 13(a)(5); Title 17, Code of Federal Regulations, Section 180.1; and Title 18, United States Code, Section 2.)

**COUNT TWO**
**(Wire Fraud)**

2. From in or about 2025 up to and including in or about January 2026, in the Southern District of New York and elsewhere, HEFU CHAI, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CHAI, knowing that he had misappropriated valuable confidential business

information, which was subject to a duty of confidentiality, used that information to trade perpetual futures on a decentralized derivatives exchange in breach of his duties, to obtain money and property from his trading counterparties.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

**Overview**

3. Based on my review of documents, conversations with other law enforcement officers and a Robinhood employee, and the information described herein, I have learned that HEFU CHAI, the defendant, misappropriated confidential and valuable nonpublic information from Robinhood Markets, Inc. ("Robinhood") and used that information to place a series of trades on Hyperliquid, a decentralized derivatives exchange. CHAI, who was then an engineer at Robinhood, had access to Robinhood's confidential information about when certain cryptocurrency tokens would be available for trading on Robinhood's crypto trading platform. Based on this information, CHAI repeatedly bought perpetual futures linked to cryptocurrency tokens on Hyperliquid in advance of Robinhood's public announcement that new cryptocurrency tokens were available for trading, and profited from these trades.

**CHAI's Access to Robinhood's Confidential Commercial Data**

4. Based on my review of documents provided by Robinhood, Robinhood's periodic reports filed on Form 10-Q and 10-K, and conversations with other law enforcement officers and a Robinhood employee, I have learned the following, among other things:

a. Robinhood is a financial services company that, among other things, offers users a platform to trade various financial products, including securities, derivatives, and digital assets. Robinhood Crypto is a subsidiary of Robinhood that operates the digital asset trading platform. Through the Robinhood Crypto platform, users can buy, sell, and hold digital assets, such as cryptocurrencies. Robinhood Crypto does not support all digital assets, however, and only those listed by the company are available for trading.

b. Between in or about 2021 and in or about May 2026, HEFU CHAI, the defendant, was employed as an engineer at Robinhood. During his employment with Robinhood, CHAI worked as a technical lead responsible for the listing of new digital assets on Robinhood Crypto. In that role, CHAI routinely had access to nonpublic information regarding whether and when Robinhood would support additional cryptocurrencies for trading on Robinhood Crypto.

c. Information regarding the digital assets to be listed on Robinhood Crypto was commercially valuable to Robinhood and maintaining the confidentiality of contemplated future listings was important to Robinhood's ultimate commercial objectives. Among other things, Robinhood Crypto competes with other cryptocurrency exchanges on the breadth of its offerings. Premature public disclosure of Robinhood's future listings would allow Robinhood's competitors to pursue similar listings and thus deprive Robinhood of the competitive advantage of listing those assets first. Additionally, because of the size and popularity of Robinhood's platform, the listing of a particular digital asset on Robinhood can create upward price pressure on the asset by

generating new demand. The premature disclosure of such listing information can lead to a reduction in Robinhood's revenue because customers who would otherwise trade these digital assets on Robinhood Crypto once listed could instead trade them on a competitor's platform to profit from the expected price increase that would follow Robinhood's listing. Further still, Robinhood assesses its brand and reputation to be important to its ability to attract and retain customers. Premature disclosure of its plans for future listings, especially when that disclosure is selective and unauthorized, risks reputational damage that may diminish Robinhood's standing with current and potential customers.

d. A digital asset may be available for trading on Robinhood Crypto typically up to one hour before Robinhood publicly announces that the asset is listed on the platform. Once a cryptocurrency is available for trading, however, there is often upward price pressure, even before the public announcement.[1]

e. Robinhood maintained strict confidentiality over information regarding its upcoming digital assets listings. Even within the company, listing information for digital assets was restricted to a select group of employees, referred to as "Coin Aware Individuals." Coin Aware Individuals were granted access to a private Slack[2] channel, where information regarding, among other things, the listing dates for new digital assets was shared, including by Robinhood employees based in Manhattan. Based on my review of the private Slack channel, I have learned that the private Slack channel bore a description that stated, in part, "Confidential channel for [Robinhood Crypto] coin listings covering planning, readiness, and launch."

f. As a technical lead responsible for the listing of new cryptocurrency tokens on Robinhood Crypto, CHAI was designated as a Coin Aware Individual and had access to the private Slack channel.

g. Robinhood had a Confidential Information and Insider Trading Policy. That policy prohibited employees from trading in securities, crypto-assets, event contracts or other financial instruments while in possession of material non-public information obtained in the course of their employment at Robinhood. The policy further provided that Coin Aware Individuals, such as CHAI, were "strictly prohibited" from trading on Robinhood or on any other platform prior to and during the 24 hours after Robinhood publicly announces a new listing or delisting on Robinhood Crypto.

h. CHAI was aware of Robinhood's insider trading policy and the confidential nature of the digital asset listing information shared in the private Slack channel. In November 2024, for example, CHAI received an email informing him that because he would have access to information regarding Robinhood's digital assets listings, "[i]t is imperative [to] keep this

---

[1] This time gap between the listing and public announcement explains the reason, at times, that HEFU CHAI, the defendant, closed his long positions before Robinhood had publicly announced that a particular digital asset was available for trading. *See infra* ¶ 7.

[2] Slack is workplace communication application that allows employees to communicate virtually. Slack is organized into, among other things, "channels," which are topic-specific group conversations. Some channels are public and open to the entire organization, while other channels are private with restricted access to certain individuals.

information confidential and . . . refrain from abusing access to or knowledge of this information including by buying or selling a given asset based on this non-public information." Likewise, in May 2025, a member of the private Slack channel who was based in Manhattan sent a Slack message to CHAI and others, "we're T-1 from launch…The 24-hour trading halt for employees will be in place."

**Relevant Background on Hyperliquid Trading**

5. Based on my review of Hyperliquid's website and other publicly available information, I have learned the following, among other things:

a. Hyperliquid markets itself as a decentralized exchange for trading cryptocurrencies and derivative products, such as futures and other derivatives tied to cryptocurrencies. Hyperliquid does not currently have approval from the U.S. Commodities Futures Trading Commission to operate a futures contracts market and uses geofencing to restrict access to its platform when users attempt to access the platform from United States IP addresses. Based on my training and experience, however, I know that individuals can easily bypass these geographical limitations by using a virtual private network, or VPN, to access the Hyperliquid website.

b. Investors on Hyperliquid can purchase, among other things, perpetual futures ("perpetuals"). Perpetuals linked to cryptocurrency are derivative products that allow investors to profit from movements in the price of a cryptocurrency without owning the cryptocurrency itself. When an investor who goes "long" on a perpetual for a particular cryptocurrency, the investor stands to profit if the value of the cryptocurrency rises; an investor who "shorts" a perpetual for a particular cryptocurrency stands to profit if the value of the cryptocurrency goes down.

c. Unlike traditional futures contracts, Hyperliquid's perpetuals do not expire and can be maintained indefinitely. To keep a position open, however, traders must make or receive periodic funding payments, which align the perpetual's price with the spot price of the underlying asset. A trader can settle the perpetual at any time and realize their gain or loss.

d. Because perpetuals can be bought on margin through various trading platforms, including Hyperliquid, traders can create substantial exposure to the price movements of a cryptocurrency with comparatively little capital.

**CHAI's Hyperliquid Wallets**

6. Based on documents provided by Robinhood, my review of Hyperliquid's website, and my review of records from cryptocurrency companies, I have learned the following, among other things:

a. On or about December 17, 2017, HEFU CHAI, the defendant, created and registered in his name an account on a cryptocurrency exchange (the "Chai Account").

b. As set forth below, the following three Hyperliquid wallets were linked to the Chai Account: 0x54838fecefbc608874726bebc90ffdf1cd2dbc7b ("Wallet-0x548"),

0xaf1772eba267b8b85fbe7738476ead5960b83a88 ("Wallet-0xAf1"), and 0xf01ec38c7e3aaa447d25e6e406319a4add647191 ("Wallet-0xF01"). Specifically:

i. Wallet-0x548 transacted with the Chai Account. Between on or about November 13, 2025, and on or about March 15, 2026, the Chai Account received approximately $100,000 from Wallet-0x548. Likewise, on or about December 4, 2025, the Chai Account sent $5 in Ethereum to Wallet-0x548. Accordingly, I believe that Wallet-0x5483 is used and controlled by CHAI because that account received assets from, and sent assets to, the Chai Account.

ii. Wallet-0xAf1 transacted with the Chai Account and Wallet-0xF01. Between on or about October 11, 2024, and on or about November 20, 2024, Wallet-0xAf1 received approximately $7,550 from the Chai Account. In addition, on or about July 28, 2025, Wallet-0xAf1 sent approximately $75,000 to Wallet-0xF01. Accordingly, I believe that Wallet-0xAf1 is used and controlled by CHAI because that account received assets from the Chai Account, and sent assets to Wallet-0xF01, which, as explained below, received assets from, and sent assets to, the Chai Account.

iii. Wallet-0xF01 transacted with the Chai Account and Wallet-0x548. Between on or about August 29, 2025, and on or about September 4, 2025, the Chai Account received approximately $25,000 from Wallet-0xF01. On or about September 18, 2025, the Chai Account sent approximately $10,000 to Wallet-0xF01. In addition, on or about November 13, 2025, Wallet-0x548 received approximately $97,000 from Wallet-0xF01. Accordingly, I believe that Wallet-0xF01 is used and controlled by CHAI because that account received assets from, and sent assets to, the Chai Account, and sent assets to Wallet-0x548, which received assets from, and sent assets to, the Chai Account.

**<u>CHAI Traded Based on Confidential Nonpublic Information</u>**

7. Based on documents provided by Robinhood, my review of Hyperliquid's website, and my review of records from cryptocurrency companies, I have learned that on at least ten occasions between in or about 2025 and in or about January 2026, HEFU CHAI, the defendant, bought long positions in cryptocurrency perpetuals on Hyperliquid in advance of Robinhood's public announcements that the underlying cryptocurrency tokens would be listed on Robinhood Crypto. On each occasion, CHAI possessed material non-public information that Robinhood would list the cryptocurrency token on Robinhood Crypto, and CHAI traded on that information in breach of the duty that CHAI owed to Robinhood to maintain the confidentiality of this information. For example:

a. On or about May 21, 2025, CHAI received a Slack message on the private Slack channel that Robinhood would list MEW and MOODENG, two meme tokens, on or about May 22, 2025. On or about May 22, 2025, CHAI, using Wallet-0xAf1, opened long positions on Hyperliquid for perpetuals with MEW and MOODENG as the underlying asset. On or about May 22, 2025, Robinhood publicly announced that MEW and MOODENG had been listed on Robinhood. Once MOODENG became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, CHAI closed his long positions in MOODENG perpetuals, earning a profit on his trading. As for MEW, both before and after MEW became available for trading at Robinhood, and before Robinhood's public announcement about the new listing, CHAI closed his long positions in MEW perpetuals, earning a profit on his trading.

b. On or about October 9, 2025, CHAI received a Slack message on the private Slack channel that Robinhood would list ASTER and XPL, the native token of the Aster and Plasma exchanges, respectively, on or about October 16, 2025, at approximately 8:00 a.m.[3] On or about October 16, 2025, CHAI, using Wallet-0xF01, opened long positions on Hyperliquid for perpetuals with ASTER and XPL as the underlying asset. On or about October 16, 2025, Robinhood publicly announced that ASTER and XPL had been listed on Robinhood. Once XPL became available for trading at Robinhood, and both before and after Robinhood's public announcement about the new listing, CHAI closed his long positions in XPL, earning a profit on his trading. As for ASTER, once ASTER became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, CHAI closed his long positions in ASTER perpetuals, earning a profit on his trading.

c. On or about October 16, 2025, CHAI received a Slack message on the private Slack channel that Robinhood would list HYPE, the native token of Hyperliquid, on or about October 23, 2025. On or about October 23, 2025, CHAI, using Wallet-0xF01, opened long positions on Hyperliquid for perpetuals with HYPE as the underlying asset. On or about October 23, 2025, Robinhood publicly announced that HYPE had been listed on Robinhood. Once HYPE became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, CHAI closed his long position in HYPE perpetuals, earning a profit on his trading.

d. On or about October 31, 2025, CHAI received a Slack message on the private Slack channel that Robinhood would launch ENA, a cryptocurrency token, on or about November 6, 2025, at 8:30 a.m. On or about November 6, 2025, CHAI, using Wallet-0xF01, opened long positions on Hyperliquid for perpetuals with ENA as the underlying asset. On or about November 6, 2025, Robinhood publicly announced that ENA had been listed on Robinhood. Once ENA became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, CHAI closed his long position in ENA, earning a profit on his trading.

e. On or about December 1, 2025, CHAI received a Slack message on the private Slack channel that Robinhood would launch AERO, a cryptocurrency token, on or about December 4, 2025, at 8:30 a.m. On or about December 4, 2025, CHAI, using Wallet-0x548, opened long positions on Hyperliquid for perpetuals with AERO as the underlying asset. On or about December 4, 2025, Robinhood publicly announced that AERO had been listed on Robinhood for trading. After Robinhood's public announcement, CHAI closed his long position in AERO.

f. On or about December 5, 2025, CHAI received a Slack message on the private Slack channel that Robinhood would launch SYRUP, a cryptocurrency token, on or about December 11, 2025, at 8:30 a.m. On or about December 11, 2025, CHAI, using Wallet-0x548, opened long positions on Hyperliquid for perpetuals with SYRUP as the underlying asset. On or about December 11, 2025, Robinhood publicly announced that SYRUP had been listed on Robinhood. Once SYRUP became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, CHAI closed his long position in SYRUP, earning a profit on his trading.

[3] All times are in Eastern Time.

g. On or about December 15, 2025, CHAI received a Slack message on the private Slack channel that Robinhood would launch LDO, a cryptocurrency token, for trading on December 18, 2025, at 8:30 a.m. On or about December 18, 2025, CHAI, using Wallet-0x548, opened long positions on Hyperliquid for perpetuals with LDO as the underlying asset. On or about December 18, 2025, Robinhood publicly announced that LDO had been listed on Robinhood. Both before and after LDO became available for trading at Robinhood, and before Robinhood's public announcement about the new listing, CHAI closed his long position in LDO, earning a profit on his trading.

h. On or about January 9, 2026, CHAI received a Slack message on the private Slack channel that Robinhood would launch DOT, a cryptocurrency token, on or about January 13, 2026, at 8:30 a.m. On or about January 13, 2026, CHAI, using Wallet-0x548, opened long positions on Hyperliquid for perpetuals with DOT as the underlying asset. On or about January 13, 2026, Robinhood publicly announced that DOT had been listed on Robinhood. Once DOT became available for trading at Robinhood, and both before and after Robinhood's public announcement about the new listing, CHAI closed his long position in DOT, earning a profit on his trading.

i. On or about January 9, 2026, CHAI received a Slack message on the private Slack channel that Robinhood would launch LIT, a cryptocurrency token, on or about January 15, 2026, at 8:30 a.m. On or about January 15, 2026, CHAI, using Wallet-0x548, opened long positions on Hyperliquid for perpetuals with LIT as the underlying asset. On or about January 15, 2026, Robinhood publicly announced that LIT had been listed on Robinhood. Once LIT became available for trading at Robinhood, and both before and after Robinhood's public announcement about the new listing, CHAI closed his long position in LIT.

8. As a result of the above-described trading on Hyperliquid, HEFU CHAI, the defendant, earned more than $50,000 in illicit profits.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of HEFU CHAI, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

JOSEPH KIM
Special Agent
Federal Bureau of Investigation

Sworn to before me this 16th day of September, 2026.

THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York

Mod AO 442 (09/13) Arrest Warrant AUSA Name & Telno: AUSA Alexandra Rothman, 212-637-2580

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

United States of America
v.

Hefu Chai,

*Defendant*

Case No. 26 MAG 3716

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* Hefu Chai,
who is accused of an offense or violation based on the following document filed with the court:

❐ Indictment ❐ Superseding Indictment ❐ Information ❐ Superseding Information ☑ Complaint
❐ Probation Violation Petition ❐ Supervised Release Violation Petition ❐ Violation Notice ❐ Order of the Court

This offense is briefly described as follows:

7 U.S.C. §§ 9(1) and 13(a)(5); 17 C.F.R. § 180.1 (commodities fraud)
18 U.S.C. §§ 1343 and 2 (wire fraud)

Date: 09/10/2026

*Issuing officer's signature*

City and state: New York, NY

Hon. Jennifer E. Willis, U.S. Magistrate Judge
*Printed name and title*

**Return**

This warrant was received on *(date)* ________, and the person was arrested on *(date)* ________
at *(city and state)* ________.

Date: ________

*Arresting officer's signature*

*Printed name and title*